Opinión disidente emitida por el
Juez Asociado Señor Es-trella Martínez
a la que se unen el Juez Presidente Se-ñor Hernández Denton y la Jueza Asociada Señora Ro-dríguez Rodríguez.
La interpretación que hoy realiza la opinión mayorita-ria no se atempera a lo dispuesto en nuestra Regla 36 de Procedimiento Civil de 2009 (32 LPRAAp. V). La fórmula que incorpora la mayoría de este Tribunal es en extremo rigurosa y contraria a las normas básicas de la concesión de una sentencia sumaria y a la naturaleza de este mecanismo. Además, discrepo de la introducción a nuestro ordenamiento del sham, affidavit doctrine en este caso, así como de la aplicación de esta doctrina. Por estas razones, disiento.
I
El Sr. José J. Zapata Berríos fue despedido el 1 de diciembre de 2010 de su puesto de coordinador y ayudante de presidente en J.F. Montalvo, luego de ocho años de servicio ininterrumpido. Como consecuencia, presentó una de-manda por despido injustificado y se acogió al procedi-miento de la Ley Núm. 2 de 17 de octubre de 1961 (32 LPRAsec. 3118 et seq.). Posteriormente, J.F. Montalvo con-testó la demanda. Entre sus defensas, planteó que el des-pido estuvo justificado debido a que la compañía realizó una reorganización por razón de una reducción de volumen *469 de ventas o ganancias, en la cual alegadamente fue elimi-nado el puesto del señor Zapata.
Así las cosas, J.F. Montalvo presentó una solicitud de sentencia sumaria. En esta incluyó doce hechos, los cuales sostuvo que no estaban en controversia. Alegó que su in-greso neto disminuyó considerablemente debido a la reduc-ción en el volumen de ventas. Sostuvo que, como conse-cuencia, realizó una restructuración y despidió al señor Zapata, así como a otros empleados. Además, argüyó que no se había contratado a otra persona para realizar las funciones correspondientes al señor Zapata. Para susten-tar su solicitud, hizo referencia a una deposición tomada al señor Zapata.
En su oposición a que se dictara sentencia de forma su-maria, el señor Zapata identificó, de manera enumerada del 1-5, cinco hechos que consideró estaban en controversia. Entre estos, sostuvo que: J.F. Montalvo en-tregó bonos de productividad a empleados con posteriori-dad a su despedido; J.F. Montalvo no estaba perdiendo dinero al momento de ser despedido; J.F. Montalvo empleó a nuevas personas luego de su despido, y el Sr. Luis Arroyo Algorri fue contratado para llevar a cabo las funciones que el señor Zapata realizaba.
El Tribunal de Primera Instancia, luego de evaluar la oposición, declaró “no ha lugar” la solicitud de sentencia sumaria. El foro primario determinó que existía controver-sia en torno a si la disminución de ganancias y reorganiza-ción era un mero pretexto. Sin embargo, en reconsidera-ción, el Tribunal de Primera Instancia desestimó la totalidad de la demanda por despido injustificado. El foro primario sostuvo que el despido estuvo justificado y que respondió a una reorganización provocada por la merma considerable en ingresos. Entre las determinaciones de he-chos realizadas se encontraba que el señor Zapata no tenía conocimiento acerca de si se había contratado a alguien para ocupar el puesto de coordinador y ayudante del *470 presidente. El Tribunal de Primera Instancia entendió que no había controversia sobre este aspecto, debido a que la directora de recursos humanos declaró que no se había contratado a nadie para realizar las funciones que el señor Zapata realizaba en su puesto.
El foro primario no consideró la declaración jurada pre-sentada por el señor Zapata, ya que sostuvo que su inter-pretación pretendía crear una controversia sobre hechos admitidos por él mismo en una deposición previa. De esta forma, acogió los planteamientos de J.F. Montalvo al respecto. Inconforme, el señor Zapata apeló el fallo en su contra ante el Tribunal de Apelaciones.
El foro apelativo intermedio revocó la determinación del Tribunal de Primera Instancia, por considerar que J.F Montalvo no logró refutar la existencia de controversias sobre ciertos hechos esenciales. En específico, determinó que aunque hubo evidencia en cuanto a la reducción de ventas de la empresa, el recurrido puso en tela de juicio la necesidad de su despido como parte de una restructura-ción, lo que exigía la celebración de una vista evidenciaría. Sostuvo que los argumentos de J.F Montalvo fueron meras alegaciones que debían ser dirimidas por el tribunal. El mencionado foro determinó en su sentencia que el señor Zapata aceptó en su deposición que otros empleados fueron despedidos y que hubo pérdidas de ingresos. Sin embargo, señaló que consideraba que su despido fue injustificado de-bido a que se contrataron posteriormente a otros emplea-dos y que, incluso, uno de ellos fue reclutado para susti-tuirlo en sus funciones. Por ello, determinó que J.F. Montalvo no logró refutar la existencia de controversias sobre hechos esenciales. Inconforme, J.F. Montalvo compa-reció ante nos mediante un recurso de certiorari en el cual señaló, en síntesis, que erró el Tribunal de Apelaciones al determinar que existen hechos materiales en controversia.
En el camino de resolver la controversia ante nos, la opinión mayoritaria pauta aspectos relacionados a: (1) la *471 interpretación sobre el concepto justa causa consignado en el Art. 2(e) y (f) de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185b(e) y (f)) cuando existe una reorganiza-ción por enfrentar una reducción en el volumen de ganan-cias o ventas de una empresa; (2) los requisitos para im-pugnar satisfactoriamente una solicitud de sentencia sumaria, y (3) el uso de una declaración jurada que contra-dice un testimonio anterior que es traído con el propósito de oponerse a que sea dictada sentencia sumaria.
II
Al atender el segundo aspecto, la opinión mayoritaria comienza por explicar los requisitos de la Regla 36.3, supra, sobre la forma de impugnar una solicitud de sentencia sumaria. Posteriormente, la opinión analiza los hechos propuestos por las partes y si estos siguieron las formali-dades exigidas. Opinión mayoritaria, págs. 435-438.
En el caso de epígrafe, como mencionamos, la parte de-mandada presentó una solicitud de sentencia sumaria en la cual sostuvo doce hechos, los cuales alegó que no esta-ban en controversia. Estos hechos fueron enumerados del 1 al 12. Por su parte, el señor Zapata Berríos en su oposición a que se dictara sentencia de forma sumaria, identificó de manera enumerada, cinco hechos que consideró que esta-ban en controversia. La primera determinación de la opi-nión mayoritaria es que es “indiscutible que la parte recu-rrida no sometió ‘una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte pro-movente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos’ según requiere la Regla 36.3(b)(2) de Prodecimiento Civil [...]”. Opinión ma-yoritaria, págs. 437-438. Basada en esa premisa errónea, la mayoría concluye que no se rebatió conforme a la regla ninguno de los doce hechos materiales presentados como que no están en controversia por la parte que solicitó la *472 sentencia sumaria, debido a que “el recurrido no hizo refe-rencia expresa al número específico del párrafo que inten-taba rebatir”. Opinión mayoritaria, pág. 445 esc. 11. El efecto, según la mayoría, es que los hechos presentados en la solicitud de sentencia sumaria se dan por admitidos. Por considerar que el mencionado proceder acerca de la forma y la automaticidad de la determinación de admisión de estos hechos constituye un rigor desmedido que se aleja del texto y propósito de nuestras Reglas de Procedimiento Civil, no estoy de acuerdo con esta determinación.
A. Como sabemos, la sentencia sumaria es el meca-nismo procesal adecuado para resolver controversias que no requieran la celebración de un juicio. Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011); Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010). Hemos reiterado que toda duda sobre la existencia de una controversia de hechos bona fide debe ser resuelta contra la parte que solicita la sentencia sumaria. Córdova Dexter v. Sucesión Ferraiuoli, supra, pág. 556; González Aristud v. Hosp. Pavía, 168 DPR 127, 138 (2006), Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 610 (2000); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 DPR 714, 720 (1986).
Al determinar acerca de la existencia de controversias de hechos que impiden dictar sentencia de forma sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos presen-tados junto con la moción en oposición, así como los que obren en el expediente del tribunal. Ramos Pérez v. Univisión, supra, pág. 216; Cruz Marcano v. Sánchez Tarazona, 172 DPR 526, 550 (2007); Sucn. Maldonado v. Sucn. Maldonado, 166 DPR 154 (2005). Cuando los documentos no controvertidos que acompañan la moción de sentencia sumaria demuestran que no hay una controversia de hechos real y sustancial, y solo resta aplicar el derecho, la sentencia sumaria procederá. ELA v. Cole, 164 DPR 608, 625 (2005). Al respecto, en Ramos Pérez v. Univisión, supra, *473 pág. 214, este Tribunal expresó que existe una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida.
Quien solicita la sumaria, además de demostrar que no existe controversia de hechos materiales, debe establecer que como cuestión de derecho procede que se dicte sentencia a su favor. Soc. de Gananciales v. Vélez & Asoc., 145 DPR 508, 526 (1998). La sentencia sumaria se dictará si surge con claridad que el promovido no prevalecerá bajo ningún supuesto de hechos y el tribunal tiene ante sí todos los hechos necesarios para resolver la controversia. Malavé v. Oriental, 167 DPR 593, 605 (2006) (per curiam). “Esto es, que no tiene derecho a recobrar bajo cualquier circuns-tancia que resulte discernible de la evidencia y que el tribunal cuenta con la verdad sobre todos los hechos necesa-rios o materiales para resolver la controversia ante su consideración”. J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1040.
El mecanismo de sentencia sumaria es un remedio dis-crecional que únicamente se concederá cuando la evidencia que se presente con la moción establezca la existencia de un derecho. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 911 (1994). El principio rector para su utilización es el discernimiento del juzgador, ya que de ser mal utilizada podría despojar a un litigante de su día en corte, afectando así su debido proceso de ley. Roig Com. Bank v. Rosario Cirino, 126 DPR 613, 617 (1990). Debido a su naturaleza discrecional, su uso debe ser mesurado. Sucn. Maldonado v. Sucn. Maldonado, 166 DPR 154, 185 (2005). El propósito de utilizar este criterio estricto es que al evaluar una mo-ción de sentencia sumaria no se lesionen los intereses de las partes. Vera v. Dr. Bravo, 161 DPR 308, 334 (2004).
Los foros apelativos debemos utilizar los mismos crite-rios que el Tribunal de Primera Instancia al momento de *474 determinar si procede una sentencia sumaria. Vera v. Dr. Bravo, supra, págs. 334-335. El foro apelativo enfrenta las limitaciones siguientes: solo puede considerar los docu-mentos que fueron presentados ante el foro primario y solamente puede determinar si existe o no alguna controversia germina, de hechos materiales y esenciales. Const. José Carro v. Mun. Dorado, 186 DPR 113, 129 (2012); Vera v. Dr. Bravo, supra, págs. 334-335. Véase, además, Cuevas Segarra, op. cit, T. III, pág. 1042.
En cuanto a la manera de responder una moción de sentencia sumaria, la Regla 36.3, supra, establece que la contestación del promovido debe contener lo siguiente: (1) una exposición breve de las alegaciones; (2) los asuntos litigio-sos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admi-sible en evidencia donde estos se establecen, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) una enumera-ción de los hechos que no están en controversia, con indi-cación de la prueba admisible en evidencia donde se esta-blecen, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal, y (6) las razones por las cuales no debe ser dictada la senten-cia, argumentando el derecho aplicable. Regla 36.3(b), supra.
B. La opinión mayoritaria presupone que nuestra Regla 36, supra, requiere que la contestación a la solicitud de sentencia sumaria indique específicamente los párrafos, según enumerados por el promovente. Sin embargo, lo que dispone la regla es que debe hacerse una referencia a los párrafos enumerados por la parte promovente. Ello no es *475 equivalente a requerir establecer específicamente el nú-mero del hecho planteado que se pretende rebatir.
La Regla 56 de Procedimiento Civil federal, la cual sirvió de modelo para la creación de nuestra regla referente a la sentencia sumaria, no dispone la forma específica de sustentar la oposición a la sentencia sumaria. Algunos es-tados, por su parte, han adoptado reglas que disponen un sistema de referencia estilo contrapuntos (counterpoints). Este estilo requiere incluir una contestación con indicación de la correspondiente enumeración para cada uno de los hechos sometidos. 11 Moore’s Federal Practice 3d Sec. 56.70(5)(c), pág. 152.1 (2013).
A diferencia de otras jurisdicciones, en las que específi-camente se dispone que se darán por admitidos los hechos si no se controvierten específicamente por un párrafo con la enumeración correspondiente, nuestra regla lo que exige es que se haga una referencia al párrafo. En Moore’s Federal Practice se reconoce una distinción entre los estados que requieren el sistema de point y los que exigen el counterpoint. Requerir una referencia a los párrafos no es lo mismo que el sistema de counterpoints.(1) Nuestra regla no dispone los requisitos que la opinión mayoritaria intenta incorporar y requerir al sostener que la solicitud de sentencia sumaria debe ser contestada de manera especí- *476 fica, señalando cada uno de los hechos establecidos me-diante indicación del número del párrafo.
C. Por su parte, la Regla 36.3(d) dispone que, a menos que esté debidamente controvertida conforme lo dispone la regla, toda relación de hechos expuesta en la moción de sentencia sumaria o en su contestación podrá considerarse admitida si se indican los párrafos o las páginas de las declaraciones juradas o de otra prueba admisible en evi-dencia donde esta se establece. Regla 36.3(d), supra. Aún de considerarse que la relación de hechos de la moción no fue debidamente controvertida, no por ello son automática-mente admitidos los hechos presentados en la moción de sentencia sumaria o en su contestación. La regla dispone que “podrá considerarse admitida”. Ello ocurrirá luego de que el tribunal analice la prueba ante sí. Debe entenderse que a lo que se refiere la regla, al establecer que “podrá considerarse admitida”, es que está ante la consideración del tribunal y el juzgador determinará acerca de ella. “ [E] 1 Tribunal debe examinar los autos como un todo y toda la prueba que obra allí”. Cuevas Segarra, op. cit., pág. 1059. Véase Reeves v. Sanderson Plumbing Products, Inc., 147 Le 2d 105, 121 (2000). La parte contra quien se solicita la sentencia sumaria no siempre tiene que presentar eviden-cia adicional ni esta serle requerida para que no sea dic-tada sentencia sumaria en su contra. Moore’s Federal Practice, supra, Sec. 56.41(l)(b). El tribunal atenderá los documentos en el expediente y determinará si estos de-muestran que existe una genuina controversia de hechos. Id. La manera como se responda una solicitud de sentencia sumaria no tiene el drástico efecto de admitir automática-mente los hechos presentados por la parte que solicita la sumaria como hechos esenciales que no están en controversia.
De acuerdo con una interpretación integral del resto del texto de la propia Regla 36.3, supra, podemos constatar *477 que resulta ilógico dar por admitidos los hechos de manera automática. Al analizar una disposición legal no debemos interpretarla en el vacío, sino en el contexto de todo el estatuto. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. 1, pág. 245. Siguiendo este principio para poder precisar cuál sería el efecto de la frase “podrá considerarse admitida”, al examinar en conjunto las disposiciones de la Regla 36, supra, surge con claridad que el efecto no puede ser de admisibilidad automática. Veamos.
En las situaciones en que la parte contra quien se pre-senta la solicitud no la contesta en el término dispuesto para ello —escenario más drástico que cuando se contesta sin seguir la fórmula propuesta por la mayoría — , el efecto que impone la regla es que la moción queda sometida para la consideración del Tribunal. Regla 36.3(e) de Procedi-miento Civil, supra. Ni siquiera en ausencia de oposición a una solicitud de sentencia sumaria se entiende que los he-chos presentados por el promovente podrían darse por ad-mitidos automáticamente, como intima la opinión mayoritaria. Por el contrario, la solicitud será considerada por el Tribunal, el cual dictará la sentencia sumaria si no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y si como cuestión de derecho ésta procede. Es decir, simplemente estos hechos quedan some-tidos para la consideración del Tribunal. Presentar una oposición a la solicitud de sentencia sumaria, bajo el están-dar de rigor desmedido incorporado por la mayoría, aca-rrea un efecto más lesivo que no presentar contestación alguna. Mantener el alcance de la ponencia mayoritaria es contrario al propósito que inspiró la adopción del actual texto de despejar controversias. Es decir, sería un contra-sentido que la parte que no se opone a una sumaria cuente con mayor protección del Tribunal que la parte que se ac-tivó y se opuso a la petición.
*478 Además de lo que deberá contener la contestación a la moción de sentencia sumaria, la Regla 36, supra, dispone en su inciso (c) que la parte contraria no puede descansar en sus alegaciones, sino que deberá contestar de forma tan detallada y específica como lo ha hecho la parte promovente. Independientemente del formato, lo que dis-pone este inciso es que el que se opone a la solicitud deberá informar las bases de su moción e identificar las porciones de la evidencia en las que se fundamenta, en forma tan específica como lo hizo la parte promovente. Regla 36(c), supra. El mismo inciso dispone que el efecto de incumplir con lo anterior será dictar sentencia sumaria en su contra si procede.
La inquietud de la interpretación que hoy este Tribunal establece sobre lo que dispone la Regla 36, supra, va más allá de los vocablos utilizados. Preocupa el efecto de la de-terminación de admisibilidad. La opinión mayoritaria dis-pone que al esos doce hechos darse por admitidos, los cinco hechos que la parte contraria expone que están en contro-versia en su oposición a que se dicte sentencia sumaria, solamente se considerarán si sugieren hechos materiales adicionales que hagan improcedente dictar sentencia su-maria, según solicitado. De esta manera, el juzgador no podría considerar los hechos presentados en una contesta-ción como hechos que la parte sostiene están en controver-sia, ni así tampoco los documentos en el expediente a los que los párrafos o las páginas de las declaraciones juradas u otra evidencia a la que se hace referencia, si no sugieren hechos adicionales y no se controvirtieron mediante refe-rencia al número del párrafo específico. Al amparo de esta interpretación, el juzgador tiene carta abierta para hacer caso omiso de toda esa evidencia en el expediente, aunque revelen hechos contradictorios a los sometidos por la parte que solicitó la sentencia sumaria.
Reconozco que el inciso (d) de la citada Regla 36.3, en su segundo párrafo, establece que el tribunal no tiene la obli- *479 gación de considerar aquellos hechos que no han sido espe-cíficamente enumerados y que no tienen una referencia a la prueba donde se establecen. El tribunal tampoco tiene obligación de considerar cualquier parte de una declara-ción jurada o de otra prueba admisible en evidencia a la que no se haya hecho referencia en una relación de hechos. Sin embargo, el tribunal debe hacerlo, de así entenderlo necesario. El objetivo de aligerar la tramitación de los ca-sos no debe menoscabar el principio de alcanzar una solu-ción justa. Ninguna parte de esta disposición establece que no se podrán considerar hechos presentados si sugieren hechos contradictorios a los sometidos por la parte que so-licitó la sentencia sumaria y no se controvierten mediante referencia al número del párrafo específico. Tampoco im-pide que se considere la prueba a la que se hace referencia. Por el contrario, el inciso (e) de la Regla 36.3, supra, dis-pone que “la sentencia solicitada será dictada inmediata-mente si las alegaciones, deposiciones, contestaciones a in-terrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia, demues-tran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente”. Regla 36.3, supra. Esto presu-pone que se considerará de forma integral y no automati-zada la prueba ofrecida a la que se hace referencia.
Es decir, el tribunal no tiene discreción para hacerse de la vista larga si existe evidencia señalada que sostiene una controversia de hechos por el automatismo de admitir los hechos presentados por la parte promovente y que no fue-ron debidamente controvertidos. Mucho menos cuando la propia disposición lo que establece es que la relación de hechos expuesta y no controvertida, según lo dispuesto en la regla podrá considerarse admitida.
El informe de las nuevas Reglas de Procedimiento Civil del Secretariado de la Conferencia Judicial demuestra que *480 el Comité entendió importante expresar en la Regla 36 los requisitos del contenido de la solicitud de sentencia suma-ria y su correspondiente contestación, ya que ello facilita el trámite de su consideración ante el tribunal. Informe de las Reglas de Procedimiento Civil del Secretariado de la Conferencia Judicial y Notarial, Tribunal Supremo de Puerto Rico, 2008, pág. 405. Sin embargo, señala el in-forme que antes de tomar una decisión, el tribunal anali-zará los documentos que acompañan la solicitud y su opo-sición, así como los que obran en el expediente y, a base de ello, determinará si la parte que se opone controvirtió al-gún hecho importante y pertinente. íd., pág. 406. Esto se justifica, ya que en los casos que no exista una clara cer-teza sobre los hechos importantes y pertinentes de la con-troversia, no procede una sentencia sumaria. Id., pág. 407. Por lo tanto, el juzgador tiene un deber no discrecional de analizar los documentos que se acompañan, tanto a la so-licitud, como a su contestación, independientemente del formato del contenido de la moción.
Sin embargo, la interpretación que sostiene la opinión mayoritaria altera las normas básicas de la concesión de una sentencia sumaria. Más allá de una mera interpreta-ción de la referida Regla, este Tribunal impone, por fiat judicial, unas consecuencias no contempladas en la Regla 36, supra. Como agravante, se aleja del propio texto de la norma interpretada y sus consecuencias serán contrarias al propósito y a la propia naturaleza de la sentencia sumaria. De esta manera, una mayoría de este Tribunal optó por traer el automatismo por la cocina, concediéndoles un cheque en blanco a los jueces de los tribunales de ins-tancia para hacer caso omiso a evidencia en el expediente, aunque de esta surja claramente que existe controversia de hechos que impide dictar sentencia de forma sumaria.
Además, la opinión mayoritaria disfraza su plan de au-tomatismo invocando erróneamente la discreción que me-rece el foro primario. Sostiene que las determinaciones dis- *481 crecionales del Tribunal de Primera Instancia no serán re-vocadas a menos que se demuestre que el foro primario abusó de su discreción. Sin embargo, debemos recordar que al determinar si procede una sentencia sumaria los foros apelativos debemos utilizar los mismos criterios que el foro primario. En este recurso, nos encontramos en la misma posición que el Tribunal de Primera Instancia. Al evaluar el expediente, estamos en igual situación para determinar si existe o no alguna controversia genuina de hechos ma-teriales y esenciales.
III
El tercer aspecto que trata la opinión mayoritaria es el uso de una declaración jurada por una parte para contra-decir un testimonio anterior, con el fin de impedir que se dicte sentencia sumaria en su contra. Conforme con esta doctrina, una parte no puede crear una controversia de un hecho material mediante una declaración jurada que contradice el testimonio anterior, ello con el fin de impedir que se dicte sentencia de forma sumaria. Van Asdale v. International Game Technology, 577 F.3d 989 (9no Cir. 2004). En estas circunstancias, el hecho que se alega está en con-troversia se puede percibir como un engaño y, por lo tanto, no ser considerado un impedimento para conceder la sentencia sumaria. Doe ex rel. Doe v. Dallas Independent School Dist., 220 F.3d 380 (5to Cir. 2000). Esta norma es conocida como sham affidavit doctrine.
Sin embargo, no debe rechazarse una declaración jurada de una parte solo porque está en conflicto en algún grado con la deposición anterior. Kennett-Murray Corp. v. Bone, 622 F. 2d 887 (5to Cir. 1980). Tampoco toda declara-ción jurada contradictoria es considerada como un engaño para que no sea dictada sentencia sumaria. De Luca v. Trustees of University of Pennsylvania, 834 F.Supp.2d 282 *482 (E.D. Pa. 2011). Una genuina controversia de hechos puede surgir de la declaración jurada, aun si está en conflicto con la declaración anterior. Palazzo rel. Delmage v. Corio, 232 F.3d 38 (2do Cir. 2000); Kennett-Murray Corp. v. Bone, supra.
Cuando es empleada adecuadamente y no de forma inflexible, esta doctrina ha sido de gran valor para las cortes en otras jurisdicciones. C.J. Cox, Reconsidering the sham affidavit doctrine, 50 Duke L.J. 261, 284 (2000). Por ello, aunque la norma ha sido adoptada por la mayoría de los circuitos federales, no aplica mecánicamente. 11 Moore’s Federal Practice 3d Sec. 56.14[1][f] (1997); Shelcusky v. Garjulio, 172 N.J. 185, 196 (2002).
Esta doctrina debe usarse con prudencia y solamente en situaciones en las que la declaración inicial contiene res-puestas inequívocas a preguntas claras, precisas y libres de ambigüedad sobre un hecho medular. Yeager v. Bowlin, 693 F.3d 1076 (9no Cir. 2012). Solo debe concederse la sentencia sumaria luego de determinar que la declaración jurada presenta un engaño de un elemento esencial y que la inconsistencia es clara e inequívoca. Hollins v. Delta Airlines, 238 F.3d 1255 (10mo Cir. 2011); Ram v. Infinity Select Ins., 807 F.Supp.2d 843 (N.D. Cal. 2011); Croom v. Balkwill, 645 F.3d 1240 (11mo Cir. 2011). Por ello, para que aplique esta doctrina, es necesario que la contradicción entre el testimonio de la deposición y la declaración jurada posterior sea una manifiesta o evidente. Garcia v. Sprint PCS Caribe, 841 F.Supp.2d 538 (D. P.R. 2012); Van Asdale v. Int’l Game Tech, supra; Kennett-Murray Corp. v. Bone, supra. Solamente así la declaración quedará derrotada y no se admitirá. Íd.
Algunas de las circunstancias en las que no debe excluirse la declaración es cuando esta amplía o explica el testimonio ofrecido en una deposición anterior. Lipsteuer v. CSX Transp., Inc., 37 S.W.3d 732 (2000). 73 Am. Jur.2d Summary Judgment Sec. 57, Affidavit contradicting earlier sworn testimony, 2013. Ello ocurre cuando las contes- *483 taciones de la deposición no son tan claras o las preguntas son ambiguas y la declaración jurada posterior crea una controversia genuina, mediante el ofrecimiento de hechos adicionales. 10 Wright, Miller and Kane, Federal Practice & Procedure 3d Sec. 2726 (1998); Shelcusky v. Garjulio, 172 N.J. 185 (2002). La otra excepción reconocida por algunos circuitos es cuando la declaración jurada presenta evidencia que no era conocida antes o fue recordada poste-riormente por el declarante. Adelman-Tremblay v. Jewel Companies, Inc., 859 F.2d 517 (7mo Cir. 1988). (“[N]ewly-remembered facts, or new facts, accompanied by reasonable explanation, ordinarily should not lead to the striking of a summary judgment declaration as a sham”). Yeager v. Bowlin, supra, pág. 1081; Cleveland v. Policy Management Systems Corp., 526 US 795 (1999). El tribunal debe observar si el testimonio posterior refleja el testimonio original del deponente, o si otras circunstancias le convencen de que las enmiendas deben permitirse. Axxiom Mfg., Inc. v. McCoy Investments, Inc., 846 F.Supp.2d 732 (S.D. Tex. 2012).
En numerosas ocasiones las declaraciones juradas que se presentan junto a una oposición a que dicte sentencia sumaria no son fraudulentas. Por esta razón, además de las excepciones mencionadas, muchas cortes federales han desarrollado una práctica general, mediante la cual es con-siderada válida la declaración posterior hasta que se pruebe que es en efecto un engaño (sham). Véanse: Darnell v. Target Stores, 16 F.3d 174, 179 (7mo Cir. 1994); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 267 (9no Cir. 1991). Según esta práctica, previo a determinar si una declara-ción jurada debe ser descartada para crear una controver-sia con el propósito de que no se pueda dictar sentencia sumaria, el tribunal debe realizar una determinación factual de si la declaración jurada que contradice la anterior deposición es en realidad un engaño (sham). Kennedy v. Allied Mut. Ins. Co., supra. De esta forma, esta regla no *484 puede disponer automáticamente de todo caso en el que se presenta una declaración jurada que parece ser contradic-toria a una declaración anterior para sustentar una oposi-ción a que se dicte sentencia sumaria. Esto va en armonía con la visión de que las inferencias deben de verse a la luz más favorable de quien se opone a que se dicte sentencia sumaria en el caso. Cox, supra, pág. 280.
Como vemos, aunque existe una regla general en los diversos circuitos que han aplicado esta doctrina acerca de que una parte no puede crear una controversia de hechos mediante una declaración jurada que contradice su testi-monio anterior, esta norma tiene unos requisitos para su aplicación y una serie de excepciones reconocidas. La pri-mera determinación que debe realizarse es si existe una contradicción. De existir, debe evaluarse si es una contradicción clara y patente. Yeager v. Bowlin, supra, pág. 1080. Igualmente, para aplicar esta doctrina, el tribunal debe realizar primero una determinación acerca de si la contra-dicción es en realidad un sham. Kennedy v. Allied Mut. Ins. Co., supra. Además, un tribunal no debe de aplicar esta doctrina cuando la contradicción se explica razonablemente, cuando existió confusión o falta de claridad en las preguntas de la deposición anterior, o cuando la nueva declaración se basa en evidencia hasta entonces desconocida. íd.
Establecida la norma general, sus requisitos y sus excepciones, pasemos a determinar si la norma de sham affidavit doctrine aplica a los hechos ante nos.
En la deposición realizada al señor Zapata se le pre-guntó en cuáles hechos alegaba que el despido fue injustificado. El abogado le preguntó si se basaba en que contrataron a otras personas, a lo que el señor Zapata res-pondió que se basaba en eso y en otras cosas más. Luego, el señor Zapata mencionó la situación del trato hacia él y sostuvo que había otras cosas, pero que no las podía decir. El abogado entonces le dijo lo siguiente: “Bueno, pero en *485 relación a su despido que usted alega que es injustificado es en lo que usted ha dicho aquí bajo juramento, ¿correcto?”. Apéndice del Certiorari, Deposición, pág. 20. El señor Zapata respondió diciendo “es correcto”, y se dio por terminada la toma de deposición. íd. Luego, en la oposición a que se dictara sentencia sumaria, el señor Zapata sos-tuvo en una declaración jurada que se habían otorgado bo-nos de productividad a ciertos empleados. La opinión ma-yoritaria concluye que no podía traer por vez primera en la oposición a la sentencia sumaria el asunto de los bonos de productividad. La justificación de la opinión mayoritaria para ello es la citada jurisprudencia federal que establece que no puede una parte de forma acomodaticia acompañar una declaración jurada que contradice o impugna una de-claración anterior para establecer una controversia de he-chos artificial.
Conforme al derecho expuesto, considero que no aplica esta regla a la circunstancia en el caso de epígrafe debido a que no es una contradicción el no traer el fundamento de los bonos de productividad en la deposición. Contestar al-gunos fundamentos y expresamente decir que hay otros fundamentos, pero que no los adelantará, no es lo mismo que contradecir.
Precisamente, el objetivo del sham affidavit doctrine es que una persona no presente una declaración posterior con el propósito de dar una versión simulada, ficticia o falsa de hechos con el propósito de impedir que se dicte sentencia sumaria en su contra. Un tribunal no debe aplicar esta doc-trina cuando la contradicción no es una patente con el tes-timonio anterior o cuando no exista una incompatibilidad. La declaración jurada ofrecida por el señor Zapata no parece presentar una versión simulada, ficticia o falsa de hechos. Por el contrario, trajo elementos los cuales consideraba que debían ser expresados y que contravenían el que se dictara sentencia sumaria.
*486 Sin embargo, aun sin considerar que debe ser descar-tada por ser supuestamente contradictoria a lo declarado en la deposición, considero que el hecho de brindar bonos de productividad a empleados posteriormente a realizar los despidos por la supuesta reorganización por reducción en las ganancias o productividad, no es un hecho que vaya en contra de la alegación de la supuesta reorganización por disminución de ventas o ganancias en este caso. La opinión mayoritaria reconoce ello. Sostiene que no debía conside-rarse el señalamiento del señor Zapata, acerca de que se habían brindado bonos de productividad posterior a su des-pido, porque esto no debía ser motivo para no brindar la sentencia sumaria solicitada. Una reducción de empleados motivada por una reducción en las ventas o ganancias no es óbice para que se brinden bonos de productividad a otros empleados. Por ello, esta alegación no planteaba una con-troversia sobre un hecho esencial, según requerido por la Regla. En consecuencia, resulta innecesaria la considera-ción de la introducción del sham affidavit doctrine a nues-tro ordenamiento y la aplicación de esta norma a los he-chos ante nos.
IV
Por último, evaluemos si procedía dictar sentencia su-maria en el caso de epígrafe o si, por el contrario, existían hechos en controversia que imposibilitaba que fuera dictada.
De entrada, surge que hay controversia sobre el hecho número 12 presentado por J.F. Montalvo, acerca de si se contrató a alguien para llevar a cabo las funciones que rea-lizaba el señor Zapata.
Sin embargo, la opinión mayoritaria no atendió el hecho número 5 planteado por el señor Zapata en su oposición por considerar que estaba relacionado con el hecho número 12 presentado por J.F. Montalvo, pero que se incumplió con *487 el nuevo automatismo que se pauta por la mayoría para oponerse. Así, hacen caso omiso sobre este, tal cual no hu-biese sido planteado y no estuviese sustentado en el expediente.
J.F. Montalvo en su solicitud de sentencia sumaria sos-tuvo como hecho número 12 que el señor Zapata no sabía si se había contratado a alguien para su puesto y presentó una declaración jurada de la Directora de Recursos Huma-nos de la compañía a los efectos de establecer que no había controversia sobre este aspecto. En su declaración, la Directora de Recursos Humanos señaló que el señor Zapata era la única persona en el puesto de coordinador y ayu-dante del presidente al momento de su despido. Además, sostuvo que no se había contratado a nadie para realizar las funciones que realizaba el señor Zapata hasta el mo-mento de esa declaración.(2)
Por su parte, el señor Zapata sostuvo en su oposición a que se dictara sentencia sumaria, específicamente en el hecho 5, que se había contratado a alguien para realizar las funciones pertinentes al puesto que ocupaba. Más aún, especificó que habían contratado al Sr. Luis Arroyo Algorri para realizar sus funciones. Lo anterior fue sustentado me-diante indicación de las páginas de su deposición.
El foro primario determinó que el señor Zapata no sabía si se había contratado a alguien para ocupar el puesto de coordinador y ayudante del presidente. Sin embargo, en-tendió que no existía controversia sobre este aspecto de-bido a la declaración realizada por la Directora de Recur-sos Humanos, en la cual expresó que no se había contratado a nadie para realizar las funciones que el señor Zapata llevaba a cabo en su puesto.
La declaración jurada de la Directora de Recursos Hu-manos no sostiene que no se contrató a nadie para el *488 puesto de coordinador y ayudante de presidente, sola-mente sostiene que no se contrató a nadie para realizar las funciones del puesto. Notoriamente, existe controversia en-tonces sobre si J.F. Montalvo contrató o no personal para ocupar el puesto de coordinador y ayudante del presidente. La compañía podía presentar descripciones del puesto de las personas contratadas y no lo hizo. Tampoco existe cla-ridad acerca de si se contrataron personas en la clasifica-ción ocupacional, elemento esencial en este caso en el que el patrono alegó como justa causa para el despido del señor Zapata una reorganización de la empresa en la que deter-minó que no necesitaba las funciones del empleado despedido. J.F. Montalvo no logró establecer los elementos esenciales de su defensa.(3)
La opinión mayoritaria sostiene que una redistribución de funciones como consecuencia de la eliminación de un puesto no equivale a una sustitución en el empleo. Una redistribución de funciones no es lo mismo que el reempleo de otras personas. Conviene recordar que si se contratan a otras personas para realizar las mismas funciones de quien fue despedido debe cumplirse con los requisitos esta-blecidos en los incisos referentes al reempleo, porque de lo contrario podría ser un despido en violación a la Ley Núm. 80, supra. Véase Art. 3 de la Ley Núm. 80 (29 LPRA sec. 185(c)).
*489 La misma opinión mayoritaria señala que esa redistri-bución de tareas podría darse entre uno o varios empleados restantes de la empresa. No obstante, al reclutar a nuevos empleados es necesario cumplir con las disposiciones de reempleo mencionadas. La Ley Núm. 80, supra, no impide que una vez se despidan empleados por razones atribuibles a la empresa, sus funciones sean asignadas a otros emplea-dos que mantendrán sus respectivos puestos. Sin embargo, si el patrono decide volver a emplear a personas para que lleven a cabo labores iguales o similares a las que realizaba la persona despedida, el principio de antigüedad debe res-petarse entre empleados que estén en la misma clasifica-ción ocupacional, siempre que cuenten con las destrezas necesarias o que pueda adiestrarse en un tiempo corto y a un costo mínimo. Id. Debe seguirse el orden de antigüedad en la reposición cuando “dentro de los seis (6) meses si-guientes a su cesantía el patrono tuviere la necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido, y dentro de su clasificación ocupacional”. Guía Re-visada para la Interpretación y Aplicación de la Ley Núm. 80, 30 de mayo de 1976, según enmendada, 2000, pág. 37. Si existiera “una diferencia clara o inconcusa a favor de la eficiencia, capacidad o utilidad del empleado, estos crite-rios serán utilizados en lugar de la antigüedad”. íd.
Un patrono no puede despedir de manera caprichosa a empleados, justificando el despido al amparo de alguno de los incisos mencionados e incumplir con el principio refe-rente al reempleo cuando decide contratar empleados para realizar las funciones que realizaba el empleado despedido. Preocupa que el uso de meros cambios de clasificaciones ocupacionales pudiera usarse como subterfugio con el fin de incumplir con este principio de reempleo. Por esta ra-zón, las funciones de los empleados que son contratados en el periodo dispuesto son relevantes para realizar una de-terminación acerca de si el despido estuvo justificado. Por lo tanto, es necesario establecer, si el patrono cumplió con *490 este principio, en caso de que se hayan empleado a perso-nas durante el periodo comprendido en la ley.
En el caso de epígrafe, existe controversia sobre si se contrataron empleados con posterioridad al despido del se-ñor Zapata, y en los seis meses de su despido, para labores iguales o similares a las que desempeñaban esos emplea-dos al momento de su despido, y en su clasificación ocupacional. Además, el empleado puso en controversia la necesidad de su despido como parte de la alegada reestruc-turación, justificación brindada por el patrono. Esta reali-dad impedía conceder la sentencia sumaria en cuestión. Del expediente se desprende la necesidad de recibir prueba y escuchar testimonio en cuanto a hechos esenciales a la controversia. Además, J.F. Montalvo no logró establecer los elementos esenciales de su defensa. Existen controversias que impedían dictar sentencia de forma sumaria y deter-minar que el despido estuvo justificado.
Aun bajo el análisis que realiza la opinión mayoritaria acerca de la forma de oponerse a una sentencia sumaria, llegaríamos a igual determinación que la expresada. Sur-gen del expediente controversias genuinas al respecto, y este Tribunal no debe ignorar ello. Es un principio esencial que la sentencia sumaria solamente debe dictarse en casos claros, y cualquier duda sobre si un hecho ha sido contra-dicho debe resolverse a favor de la parte que se opone a que sea dictada la sentencia sumaria. Al considerar de forma integral y no automatizada la prueba ofrecida a la que se hace referencia, recalcamos que llegaríamos a la misma conclusión acerca de la existencia de evidencia señalada que sostiene una controversia de hechos.
V
Por los fundamentos expuestos, disiento del criterio mayoritario. En su lugar, confirmaría el dictamen del Tribunal de Apelaciones y, en consecuencia, denegaría la soli- *491 citud de sentencia sumaria y devolvería al Tribunal de Pri-mera Instancia para la continuación de los procedimientos.

 Por ejemplo, las reglas locales del estado de Oklahoma establecen un sistema claro de counterpoint. La Regla 56.1 dispone lo siguiente:
“(c) The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant’s facts that is disputed. All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party”. (Énfasis suplido). Local Rules, W.D. Okla., LCvR 56.1(c), en http://www.okwd.uscourts.gov/files/lrules.pdf.
Las reglas locales de Nebraska y Missouri también incluyen la misma fraseolo-gía: (“[...] and, if applicable, must state the number of the paragraph in the movant’s statement of material facts that is disputed”). Véanse: NE.Civ.R. 56.1; USDist. Ct.Rules W.D.Mo., Rule 56.1, en http://www.ned.uscourts.gov/localrules/rulesl2/ NECivR/56.1.pdf.

 En específico, expresó lo siguiente: “Al día de hoy en J.F. Montalvo no se ha contratado a nadie para realizar las funciones que ejercía José J. Zapata Berríos en su posición de Coordinador y Ayudante del Presidente”.

 Es importante señalar que cuando la parte que solicita la sentencia sumaria es la parte con el peso de la prueba en el juicio, la carga de la prueba para que su solicitud de sentencia sumaria prevalezca debe ser mayor. Tiene que demostrar que puede probar los elementos esenciales de su defensa o reclamo. “[W]here the moving party is the party with the ultimate burden of proof at trial, the prima facie burden is often higher, requiring that the party to show that it can, in fact, carry its burden of proving all essential elements of its claim or defense”. S. Baicker-Mckee y otros, Federal Civil Rules Handbook, St. Paul, Ed. Thomson West, 2013, págs. 1121-1122, citando a J.S. ex rel. Snyder v. Blue Mountain School Dist., 650 F.3d 915, 925 (3er Cir. 2011); Mauerhan v. Wagner Corp., 649 F.3d 1180, 1185 (10mo Cir. 2011); VRV Development L.P. v. Mid-Continent Cas. Co., 630 F.3d 451, 455 (5to Cir. 2011). Por ello, cuando un patrono demandado al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA secs. 185a-185m), presenta una solicitud de sentencia sumaria, este debe probar los elementos esenciales de su defensa.